[Cite as *Huntington Natl. Bank v. He*, 2026-Ohio-1568.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The Huntington National Bank, | : | |
| Plaintiff-Appellee, | : | No. 25AP-203 |
| | | (C.P.C. No. 23CV-7602) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Xiaowei He, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on April 30, 2026

**On brief:** *Weltman, Weinbuerg & Reis Co., L.P.A.*, and *Amanda R. Yurechko*, for appellee. **Argued:** *Amanda R. Yurechko.*

**On brief:** *Xiaowei He*, pro se. **Argued:** *Xiaowei He.*

APPEAL from the Franklin County Court of Common Pleas

JAMISON, J.

{¶ 1} Defendant-appellant, Xiaowei He, appeals from the January 24, 2025, judgment entry of the Franklin County Court of Common Pleas, granting summary judgment in favor of plaintiff-appellee, The Huntington National Bank. For the following reasons, we affirm the judgment of the trial court.

I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On October 25, 2023, appellee filed a complaint for monetary damages, alleging it entered into a June 15, 2021 loan agreement with appellant and that appellant breached that agreement. Appellee attached the loan agreement as Exhibit A and the loan transaction history as Exhibit B to the complaint. Appellee averred that appellant defaulted under the terms of the loan agreement and owed $19,187.69, which included $18,462.11 in principal plus $600.58 in accrued interest, and $125.00 in costs. The amount of $19,187.69

equals the total due, based on the loan transaction history, as of the charge-off date on May 27, 2022.

{¶ 3} On November 27, 2023, appellant filed an answer. In the answer, appellant stated she disagreed with "[p]laintiff's complaints as filed with the 'SUMMONS.' " (Emphasis in original.) (Nov. 27, 2023 Answer.) No other filings appeared on the docket until the trial court entered an order to show cause and a notice of intent to dismiss without prejudice on September 24, 2024. The order requested appellee to show cause within ten days why the action should not be dismissed for want of prosecution, as the parties had not taken any action to further the case for more than six months. On October 1, 2024, appellee informed the court that good cause existed to keep the case open because the parties were engaged in discovery and requested additional time to discuss a potential resolution.

{¶ 4} On November 26, 2024, appellant moved for summary judgment and involuntary dismissal, asserting that appellee was not the holder of the loan because it had allegedly sold the loan. Appellee filed its motion for summary judgment on December 4, 2024. Appellee argued that appellant entered into the loan agreement on June 15, 2021. Appellant received the loan proceeds pursuant to that agreement but subsequently defaulted on the terms of the agreement. In support, appellee attached an affidavit from Chris M., an authorized representative responsible for appellee's records. The affidavit confirmed that appellant defaulted on the loan agreement by failing to make payments. The affidavit also established that the remaining balance due under the loan agreement was $19,187.69. On December 10, 2024, appellee filed a motion to strike appellant's motion for summary judgment and motion to dismiss. Appellant responded to appellee's motion for summary judgment and motion to strike on December 26, 2024.

{¶ 5} On January 15, 2025, the trial court decided all pending motions. The court denied appellant's motion for summary judgment and granted appellee's motion for summary judgment and motion to strike. The trial court explained that absent fraud, a charged-off debt is still collectible and remains enforceable, therefore no genuine issue of material fact existed to warrant a trial. The court struck all of appellant's statements regarding appellee's alleged sale of her account, appellee's counsel's alleged failure to meet deadlines, appellee's failure to take action in the case, and appellant's allegations that appellee's counsel violated her ethical duty to the court. On January 24, 2025, the trial court entered judgment in favor of appellee.

{¶ 6}   It is from that judgment that appellant now appeals.

## II. ASSIGNMENTS OF ERROR

{¶ 7}   Appellant assigns the following as trial court errors:

1. The trial court erred and abused its discretion by failing to dismiss the case for want of prosecution under Civ.R. 41(B)(1), where the Plaintiff took no action for over nine months and offered no meaningful justification for the delay.

2. The trial court erred in allowing the Plaintiff to proceed with the action despite lacking standing, as the Plaintiff had previously sold and no longer owned the loan at issue, in violation of the requirement that only the real party in interest may enforce a claim under Civ.R. 17(A).

3. The trial court erred in holding the Defendant liable on a loan that was fraudulently obtained by a third party, where the Defendant was a victim of the fraudulent investment scheme and received no proceeds or benefit from the loan.

4. The trial court erred in denying the Defendant motion for summary judgment and granting summary judgment in favor of the Plaintiff when genuine issues of material fact remained, in violation of Civ.R. 56.

## III. STANDARD OF REVIEW

{¶ 8}   A trial court may dismiss an action under Civ.R. 41(B)(1) when a plaintiff fails to prosecute.  *Pembaur v. Leis*, 1 Ohio St.3d 89, 90 (1982).  The authority to dismiss for failure to prosecute resides within the trial court's sound discretion, and appellate review is limited solely to determining whether the trial court abused that discretion.  *Id*. at 91. Therefore, a trial court's dismissal for failure to prosecute will not be reversed unless the decision is unreasonable, arbitrary, or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 9}   "The question of standing is whether a litigant is entitled to have a court determine the merits of the issues presented."  *Ohio Contrs. Assn. v. Bicking*, 1994-Ohio-183, ¶ 10, citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  For purposes of appellate review, a standing question is generally a question of law reviewed under a de novo standard.  *State ex rel. Butler Twp. Bd. of Trustees v. Montgomery Cty. Bd. of Cty. Commrs.*, 2008-Ohio-6542, ¶ 11.

{¶ 10}  Under Civ.R. 56(C), summary judgment is proper when the moving party establishes: (1) an absence of genuine issues of material fact, (2) the moving party is entitled

to judgment as a matter of law, and (3) construing the evidence most strongly in favor of the nonmoving party, reasonable minds could only find in favor of the moving party. *See, e.g., State ex rel. Duncan v. Mentor City Council*, 2005-Ohio-2163, ¶ 9; *Oliver v. Fox's Food, L.L.C.*, 2023-Ohio-1551, ¶ 8 (10th Dist.).

{¶ 11} "The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Plough v. Nationwide Children's Hosp.*, 2024-Ohio-5620, ¶ 29 (10th Dist.), citing *Dresher v. Burt*, 1996-Ohio-107, ¶ 17. The moving party must point to evidence in the record affirmatively demonstrating that the nonmoving party has no evidence to support the nonmoving party's claims. *Oliver* at ¶ 9, citing *Dresher* at ¶ 18 and *Vahila v. Hall*, 1997-Ohio-259, ¶ 20.

{¶ 12} If the moving party satisfies its initial burden, then the nonmoving party "has a reciprocal burden . . . to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not respond, summary judgment, if appropriate, shall be entered against the nonmoving party." *Dresher* at ¶ 18. The nonmoving party must submit evidentiary material that shows the existence of a genuine dispute over the facts. *A.M. v. Miami Univ.*, 2017-Ohio-8586, ¶ 30 (10th Dist.). A fact is material if it might affect the outcome of the case under the applicable substantive law. *Turner v. Turner*, 1993-Ohio-176. There is a genuine dispute if the evidence presents a sufficient disagreement between the parties' positions. *Id.*

{¶ 13} An appellate court reviews a decision granting summary judgment de novo. *Gabriel v. Ohio State Univ. Med. Ctr.*, 2015-Ohio-2661, ¶ 12 (10th Dist.). "Under the de novo standard of review, we apply the same legal standard as the trial court but conduct an independent review of the evidence without deference to the trial court's decision." *Plough* at ¶ 31. The trial court's judgment must be affirmed if any grounds the movant raised in the trial court support it. *Riverside v. State*, 2010-Ohio-5868, ¶ 17 (10th Dist.).

{¶ 14} It is well-established that "on a summary-judgment motion, any inferences regarding the evidence, including the resolution of ambiguities or inconsistencies, must be made in a manner that favors the nonmoving party." *Smathers v. Glass*, 2022-Ohio-4595, ¶ 32. An appellate court is not only required "to construe evidence in a light most favorable to nonmoving parties but to also resolve inferences which may reasonably be drawn from

the evidence in favor of nonmoving parties." *Thompson v. Ohio State Univ. Physicians, Inc.*, 2011-Ohio-2270, ¶ 16 (10th Dist.). " 'Where competing inferences may be drawn or where the facts presented are uncertain or indefinite, summary judgment is not appropriate and such matters must be left to the trier-of-fact.' " *Id.*, quoting *Sprouse v. Allstate Ins. Co.*, 1989 Ohio App. LEXIS 3990, *4-5 (10th Dist. Oct. 17, 1989).

## IV. LEGAL ANALYSIS

{¶ 15} Preliminarily, because appellant is proceeding pro se on appeal, as she did in the trial court, we note that "Ohio courts hold pro se litigants to the same rules and procedures as those litigants who retain counsel. Pro se litigants are not entitled to greater rights, and they must accept the results of their own mistakes." *Williams v. Lo*, 2008-Ohio-2804, ¶ 18 (10th Dist.), citing *Whitehall v. Ruckman*, 2007-Ohio-6780, ¶ 21 (10th Dist.). Thus, like members of the bar, pro se litigants are required to comply with the rules of practice and procedure. *Hardy v. Belmont Corr. Inst.*, 2006-Ohio-3316, ¶ 9 (10th Dist.).

{¶ 16} By her first assignment of error, appellant argues the trial court erred and abused its discretion because it did not dismiss the case for want of prosecution under Civ.R. 41(B)(1). More specifically, appellant contends that the court should have dismissed the case because appellee took no action for over nine months and offered no meaningful justification for the delay.

{¶ 17} Civ.R. 41(B)(1) states: "Where the plaintiff fails to prosecute, or comply with these rules or any court order, the court upon motion of a defendant or on its own motion *may*, after notice to the plaintiff's counsel, dismiss an action or claim." (Emphasis added.) The trial court exercises its authority under Civ.R. 41(B)(1) by managing and administering its own docket to ensure the orderly and expeditious resolution of cases. *See N. Elec., Inc. v. Amsdell Constr., Inc.*, 2013-Ohio-5433, ¶ 9 (8th Dist.), citing *Pembaur*, 1 Ohio St.3d at 91.

{¶ 18} On September 24, 2024, the trial court issued an order to show cause to determine the status of the case before the pretrial scheduled for October. On October 1, 2024, appellee responded to the order to show cause by submitting a notice expressing its intention to proceed with the case. The notice informed the court that appellant and appellee were engaged in discovery and requested sufficient time to explore a potential resolution. Additionally, the timeline attached to appellant's motion for summary judgment demonstrated communication between the parties during the pendency of the

case. The record supports the actions of the trial court. We find that the trial court did not abuse its discretion when appellee's complaint was not dismissed for want of prosecution. Accordingly, we overrule appellant's first assignment of error.

{¶ 19} By way of her second assignment of error, appellant argues the trial court erred in allowing appellee to proceed with the case despite lacking standing. More specifically, appellant argues appellee allegedly sold the loan and thus no longer held it. She alleges the court violated the requirement that only a real party in interest may enforce a claim under Civ.R. 17(A).

{¶ 20} It is well-established that before an Ohio court may consider the merits of a legal claim, " 'the person or entity seeking relief must establish standing to sue.' " *Ohioans for Concealed Carry, Inc. v. Columbus*, 2020-Ohio-6724, ¶ 12, quoting *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 2007-Ohio-5024, ¶ 27. "At a minimum, common-law standing requires the litigant to demonstrate that he or she has suffered (1) an injury (2) that is fairly traceable to the defendant's allegedly unlawful conduct and (3) is likely to be redressed by the requested relief." *Id.*, citing *Moore v. Middletown*, 2012-Ohio-3897, ¶ 22. Standing does not turn on the merits of the plaintiff's claims but rather on whether the plaintiff has alleged such a personal stake in the outcome of the controversy that he is entitled to have a court hear his case. *Id.*, citing *ProgressOhio.org, Inc. v. JobsOhio*, 2014-Ohio-2382, ¶ 7.

{¶ 21} "[S]tanding is a 'jurisdictional requirement' " and " 'is an elementary concept of law that a party lacks standing to invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the subject matter of the action.' " (Emphasis omitted.) *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 2012-Ohio-5017, ¶ 22, quoting *State ex rel. Dallman v. Court of Common Pleas Franklin Cty.*, 35 Ohio St.2d 176, 179 (1973). "Because standing to sue is required to involve the jurisdiction of the common pleas court, 'standing is to be determined as of the commencement of suit.' " *Id.* at ¶ 24, quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570-571, fn. 5 (1992).

{¶ 22} Here, the record shows that appellee filed the initial complaint on October 25, 2023. Thus, standing is determined as of October 25, 2023. The undisputed evidence submitted showed that appellee and appellant executed a loan agreement on June 15, 2021. (Appellee's Ex. A.) The agreement specified that appellant was to make 59 payments of $401.70 and one payment of $402.10. The loan transaction history attached to the complaint shows that on January 15, 2022, appellant stopped making payments to appellee

in violation of the terms of the loan agreement. We find that appellee remained a party to the loan and had standing to collect on the loan.

{¶ 23} Therefore, as of October 25, 2023, when the complaint was filed, we find that appellant defaulted under the terms of the loan agreement. Appellee's Exhibit A also established appellant as the only other party bound by the terms of the loan agreement. Appellee has an interest in the dispute with appellant because failure to make payments required under the loan agreement would result in a loss of $19,187.69. Furthermore, if successful, appellee's claims against appellant would provide appellee with relief in the form of repayment. Thus, the three requirements of standing—injury, causation, and redressability—are all met in this case.

{¶ 24} Appellant argues appellee attempted to collect on a loan it did not own because appellee allegedly sold the loan. In support, appellant attached a letter to her motion for summary judgment stating that appellee charged off the loan. Later, in response to appellee's motion for summary judgment, appellant attached another letter alleging that the loan was sold. Neither letter was supported by an affidavit. After reviewing the record, we find appellant's contention that appellee sold the loan is inaccurate. The record clearly establishes that the loan was not sold but charged-off.

{¶ 25} The Supreme Court of Ohio has analyzed the basic difference between write-off and charge-off.

> Terms such as "write-off" and "charge-off" are based on accounting principles and are used to describe the situation in which a creditor has determined that a debt is unlikely to be paid, usually after 180 days without payment, and "charges off" the account receivable as uncollectable. Fox, *Do We Have A Debt Collection Crisis? Some Cautionary Tales of Debt Collection in Indiana*, 24 Loy.Consumer L.Rev. 355, 358 (2012), fn. 16; Haneman, *The Ethical Exploitation of the Unrepresented Consumer*, 73 Mo.L.Rev. 707, 713 (2008). The real debt, however, does not magically disappear.

*Taylor v. First Resolution Invest. Corp.*, 2016-Ohio-3444, ¶ 125.

{¶ 26} The distinction between a charge-off and the sale of an account has been clarified in legal cases involving whether a debt buyer can charge interest on a debt that was charged-off by the original creditor and then sold to a third party. In such cases, the original creditor waived its right to interest by ceasing to charge interest at the time of charge-off. *Id*. at ¶ 66. The Supreme Court acknowledged that " '[b]y charging off the debt and ceasing

to charge interest on it, [the bank] could take a bad-debt tax deduction . . . and could avoid the cost of sending [the debtor] periodic statements on her account.' " *Id.* at ¶ 66, quoting *Stratton v. Portfolio Recovery Assocs., L.L.C.*, 770 F.3d 443, 445 (6th Cir. 2014). In these cases, the accounts or loans that the original creditor charged-off were subsequently sold to third-party collectors seeking to recover the debt. The courts recognize the difference between charge-off by the original creditor and a sale of debt to a third party. Had the loan been sold, then appellant would have transferred the right to collect to another entity. As stated above, this is not the case.

{¶ 27} Reviewing appellee's Exhibit B, the loan transaction history, we see the loan charge-off transaction dated May 27, 2022. This included a balance due of $19,187.69 as of that date. No further interest has been charged since the charge-off date, as appellee sought judgment for the same balance due on the date of the charge-off. The loan transaction history, the affidavit attached to appellee's motion for summary judgment, and appellant's own letter attached to her motion for summary judgment demonstrated that appellee did not sell the loan but charged-off the loan with a balance due. Based upon *Taylor*, a charged-off debt remains an enforceable debt that appellee has the right to collect. Accordingly, we overrule appellant's second assignment of error.

{¶ 28} In her third assignment of error, appellant alleges that the trial court erred in granting summary judgment in favor of appellee. Specifically, appellant claims she was not liable for the loan because she was the victim of a fraudulent foreign investment scheme and did not receive any proceeds or benefits from the loan. Appellant does not allege any fraud by appellee, nor does she claim that the foreign third party acted on her behalf to execute the loan with appellee without her consent.

{¶ 29} In support of the allegations, appellant argues fraud in the factum or fraud in the inducement on behalf of a third party caused her to enter into the loan agreement, and thus she should not be liable for the loan.

{¶ 30} Fraud in the factum is present where "an intentional act or misrepresentation of one party precludes a meeting of the minds concerning the nature or character of the purported agreement." *Haller v. Borror Corp.*, 50 Ohio St.3d 10, 13 (1990). It occurs only "[w]here device, trick, or want of capacity produces 'no knowledge on the part of the releasor of the nature of the instrument, or no intention . . . to sign a release or such a release as the one executed.' " (Further quotation marks deleted.) *Id.*, quoting *Picklesimer v.*

*Baltimore & Ohio Rd. Co.*, 151 Ohio St. 1, 5 (1903). In such cases, the instrument is considered void ab initio. *Id.* This type of fraud involves the actual parties to the agreement. Fraud in the inducement occurs where "one party, who admits that they released their claim for damages and received consideration for their release, asserts that they were induced to do so by another party's fraud or misrepresentation." *Turner v. Salvagnini Am., Inc.*, 2008-Ohio-3596, ¶ 22 (12th Dist.), citing *Picklesimer* at 14. Similar to fraud in the factum, this fraud involves the actual parties to the agreement.

{¶ 31} Given our review of the record, we find that none of the cases appellant cites support her argument. Neither version of the alleged fraud applies to third parties not involved in the agreement. Consequently, appellant has failed to cite any legal authority supporting the proposition that she is not liable for the loan she entered into with appellee, based on fraud committed by an independent third party after she received the funds. It is the appellant's burden to demonstrate error on appeal. *White v. Cent. Ohio Gaming Ventures, L.L.C.*, 2019-Ohio-1078, ¶ 25 (10th Dist.). Appellant failed to meet that burden. Based on the foregoing, appellant's third assignment of error is overruled.

{¶ 32} In her fourth assignment of error, appellant argues the trial court erred in granting summary judgment to appellee when genuine issues of material fact remained.

{¶ 33} To prevail on a summary judgment motion for breach of contract, a plaintiff must prove that no genuine issue of material fact exists as to the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff. *See, e.g.*, *Jarupan v. Hanna*, 2007-Ohio-5081, ¶ 18 (10th Dist.). Here, appellee supported its motion for summary judgment by introducing several exhibits, including the loan agreement and the loan's transaction history. These documents establish appellee as the holder of the loan agreement that appellant executed on June 15, 2025. The loan transaction history evidences appellee's performance in transmitting the proceeds to appellant. Appellee's authorized representative, Chris M., via affidavit, averred that the agreement's terms were valid and that appellant breached the agreement due to nonpayment as specified by the loan agreement. Further, appellee established that the damages as a result of appellant's breach were $19,187.69.

{¶ 34} Because appellee met its initial burden, the burden was on appellant "to set forth specific facts showing that there is a genuine issue for trial." *Dresher*, 1996-Ohio-107, at ¶ 18. Appellant alleges that there are genuine issues of material fact regarding: (1)

whether appellant benefited from the loan funds, (2) whether appellee had standing at the time it filed suit, and (3) whether the prolonged delay in prosecution prejudiced appellant. Assuming, arguendo, that these are material facts, appellant's arguments fail because they are belied by the record. Appellant does not challenge the validity of the loan agreement nor claim any fraud on the part of appellee. She concedes that she took out the loan in good faith. The record clearly demonstrates that appellant benefitted from the loan funds. She used them as she wanted. It is not appellee's fault that she was the unfortunate victim of fraud. As we have already determined in our analysis of her first and second assignments of error, appellee had standing to prosecute, showed good cause for the delay of the prosecution, and we found that the trial court did not abuse its discretion when the trial court did not dismiss this matter for want of prosecution.

{¶ 35} Appellant failed to present sufficient evidence to establish that a genuine issue of material fact existed, thereby warranting trial. We find that appellant did not meet her reciprocal burden on summary judgment. Therefore, we overrule appellant's fourth assignment of error.

## V. CONCLUSION

{¶ 36} For the foregoing reasons, we overrule appellant's four assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BOGGS, P.J., and EDELSTEIN, J., concur.

_____